UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christian Strickland,  )<br>  )<br>    Plaintiff,  )<br>  )<br>  )<br>vs.  )<br>  )<br>Kilolo Kijakazi, Acting Commissioner of  )<br>Social Security Administration,[1]  )<br>  )<br>    Defendant.  )<br>  ) | Civil Action No. 5:21-247-KDW<br><br><br><br><br>ORDER |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, for the reasons that follow, the court affirms the Commissioner's decision for the reasons discussed herein.

I.   Relevant Background

    A.   Procedural History

On December 23, 2016[2] Plaintiff's grandmother applied for SSI on his behalf alleging a disability onset date of October 1, 2006. Tr. 339-44. The application was denied initially on March 10, 2017, Tr. 109-10, and upon reconsideration on June 26, 2017, Tr. 123-24. On July 21, 2017,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

[2] Although the Application Summary is dated January 12, 2017, Plaintiff's protected filing date, as reflected in the Disability Determination and Transmittal, is December 23, 2016. Tr. 109.

Plaintiff, through counsel, requested a hearing by an Administrative Law Judge ("ALJ"). Tr. 172-74. ALJ Linda Taylor conducted a hearing on October 3, 2018 in Myrtle Beach, South Carolina. Tr. 50-76. The ALJ issued an unfavorable decision on January 30, 2019. Tr. 126-50. Claimant requested review of the ALJ's decision. Tr. 227. On December 19, 2019, the Appeals Council issued an order granting Plaintiff's request for review. Tr. 154-56. The Appeals Council vacated the hearing decision and remanded the case to the ALJ to "prepare a List of Exhibits in compliance with HALLEX I-2-1-20." Tr. 155. The ALJ was also instructed, in compliance with the ruling, to "offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." Tr. 156.

ALJ Taylor conducted a second administrative hearing on July 22, 2020. Tr. 78-97. She issued a second unfavorable decision on August 26, 2020. Tr. 9-34. On October 19, 2020, Plaintiff requested review of the ALJ's decision. Tr. 333-38. On November 23, 2020 the Appeals Council issued an order denying Plaintiff's request for review, making the ALJ's August 2020 decision the final decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on January 26, 2021. ECF No. 1.

B.     Plaintiff's Background

Born on July 27, 1999, Plaintiff was 17 years old on the date his application for SSI was filed on December 23, 2016. Tr. 360. As of the date of his second administrative hearing on July 22, 2020, Plaintiff was five days shy of his 21st birthday. Tr. 81-82.

His form Disability Report-Child, dated February 3, 2017 and completed by Plaintiff's grandmother, listed Plaintiff's disabling conditions as "Severe migraines, depression, anxiety." Tr. 386. Plaintiff's current medications were Buspar and Effexor for depression, and Trazodone for sleep. Tr. 387. The form listed no side effects from medications. *Id.* At that time Plaintiff was enrolled in school, in the tenth grade, and was not in special education or speech/language therapy. Tr. 389.

A March 21, 2017 Disability Report-Appeal completed by Plaintiff's counsel indicated changes in Plaintiff's condition that occurred March 2017 and noted that his "condition has worsened and become more severe." Tr. 410. Plaintiff's representative further indicated a change in Plaintiff's activities and noted "he will not go outside, he experiences panic attacks, and will not bathe on a regular basis. He continues his psychological treatment and takes his medicine to no avail." Tr. 413.

In a July 24, 2017 Disability Report-Appeal, Plaintiff's counsel reported a change in Plaintiff's medical condition that occurred in April 2016 noting that "he is further sinking away from us and isolates himself in his room all the time. He eats in his room and his personal hygiene suffers badly." Tr. 363.

C.     The 2020 Administrative Proceedings

Plaintiff, along with his attorney, appeared via telephone conference in Myrtle Beach, South Carolina for his second administrative hearing on July 22, 2020. Tr. 80. Vocational expert ("VE") Dawn Bergren also appeared and testified. *Id.*

1.     Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff stated that he was 20 years old and affirmed he had an upcoming birthday on July 27th. Tr. 81-82. Plaintiff testified that he did not have a driver's license or permit. Tr. 82. Plaintiff stated that he lived with his "grandmother, grandfather, and [his] great aunt." *Id.* Plaintiff stated that since his last hearing, one person had moved out of the home, but that two of his sisters, his father, his stepmother, and two baby brothers were living there "for the time being." Tr. 83. Plaintiff testified that he did not graduate from high school, but his plan was to get his GED when he was able to afford it and continue his schooling with "[p]robably something to do with art maybe." *Id.* Plaintiff testified that he took art classes in middle school and, when he was in elementary school, he went to the Academy of Art, Science and Technology for a few summers. Tr. 84. Plaintiff stated that he tries to help around the house by cleaning, gathering the trash, and

3

sweeping, but stated that he cannot use any cleaning sprays because they give him migraines. *Id.* Plaintiff testified that currently he was experiencing a headache, and that his headaches typically last two days and the longest he had one to last was a week. *Id.* Plaintiff testified that he is prescribed Propranolol to prevent headaches and Imitrex for when he feels one "coming on." Tr. 85. He stated that the Imitrex keeps them "more manageable but they're still extremely painful." *Id.* Plaintiff stated that he takes the Imitrex "around four times a week on average." *Id.* He testified that he also takes Buspar and Effexor. *Id.* The ALJ acknowledged that Plaintiff was taking those two medications when they last spoke and asked if his doctor made any changes since 2018. *Id.* Plaintiff testified that he thought the Effexor was "slightly upped at one point" but that he was not sure. *Id.* Plaintiff stated that the medications keep his symptoms "lower" and that he "can definitely notice being way more anxious and [his] depression coming back when [he is] not taking them. So, they do help, yeah." *Id.* Plaintiff confirmed that he takes those medications every day. *Id.* Plaintiff testified that he is not receiving mental health therapy because they could not afford a therapist. Tr. 86. Plaintiff stated that he was "just seeing [his] doctor once every four to six months to get prescriptions refilled." *Id.*

Plaintiff testified that he was playing fewer video games than he was before. Tr. 86. He noted that he had mentioned a specific online game previously, but his "anxiety has kind of gotten to the point where even that it's hard to do." *Id.* Plaintiff testified that he tries to play video games that help him to relax. *Id.* He stated that he plays with one person online about once a week. Tr. 87. Plaintiff stated that he plays for about one hour at a time, for about three hours total throughout the day. *Id.* Plaintiff stated that he no longer goes to the grocery store, but he will ride along to the gas station or to a convenience store although he "can't really get out anymore." Tr. 88. Plaintiff stated he stopped talking to one of the two friends he had, but he still talks to the other one through text messages every day and they "try to help each other keep anxiety under control[.]" *Id.* Plaintiff testified that he walks

4

around the house with his dog for exercise and he tries to play with his father's larger dog and "walk down the road a couple of times when [he] think[s] [he] can." Tr. 88-89.

In response to questions from his attorney Plaintiff testified that he has not tried to get his driver's license because he does not think he would be able to handle being in traffic. Tr. 89. Plaintiff noted that even when he is not driving it "gets to [him] pretty badly." *Id.* Plaintiff testified that his anxiety has "definitely been getting worse" since the last hearing. *Id.* Plaintiff stated that he has been stressed about the virus, and he cannot go to therapy to try to figure it out because they cannot afford it. *Id.* Plaintiff affirmed that at present he did not have any medical coverage. Tr. 89-90. Plaintiff responded to his attorney that he is unable to leave the house on his own, and even with people it is difficult. Tr. 90. Plaintiff testified that on his last birthday he tried to go out to eat, but within ten minutes of getting there he called to be picked up because of a panic attack. *Id.* Plaintiff stated that he has an aunt who takes him to the doctor when she is available. *Id.* Plaintiff testified that he does not have a good sleeping pattern and that he sleeps more than he should because of his headaches and depression. *Id.* He stated that if he knows he has an upcoming appointment he is stressed out and it is hard for him to get to sleep if he is unable to stop thinking about it. Tr. 91. Plaintiff stated that he will sometimes fall asleep during the day, but he does not like to take naps unless he has a headache. *Id.* Plaintiff testified that his headaches are triggered by anxiety, and any sort of strong smell, dust, and really bright light. *Id.* Plaintiff stated that he did not feel going to the mall with family would be possible because three months ago he tried to go out to eat with everyone and after 15-20 minutes he left to sit in the car and wait for them to finish. *Id.*

Plaintiff testified that it is hard for him to remember to take care of his personal hygiene needs and that he showers or bathes once a week. Tr. 91. He stated that his grandmother has to remind him to bathe, although "[e]very once and a while" he will remember on his own. Tr. 92. Plaintiff stated that some days he has to be reminded to take his medications, but because he has been taking them

5

for eight years, he can remember them more. *Id.* Plaintiff testified that the Imitrex makes him very drowsy and he is usually asleep within an hour of taking it. *Id.* He stated that he did not notice any side effects from his other medications. *Id.* Plaintiff testified that he tries to leave his room for ten minutes at a time to spend time with other family members. He stated that on average he spends 40-50 minutes a day with his family, and anything more than that would be "very overwhelming." *Id.* Plaintiff testified that the longest he has had a panic attack last is two hours, but on average they last an hour. Tr. 92-93. Plaintiff stated that during a panic attack he tries to do anything he can to distract himself and calm down. Tr. 93. He referenced the games he mentioned previously, and trying to talk to his friend, or trying to draw and breathe. *Id.* Plaintiff noted that his friend is someone he met in group therapy when he was 13 years old. *Id.* Plaintiff testified that he was unable to finish high school because the video chats would give him panic attacks and migraines that would put him "in bed for days at a time." *Id.* He stated that would result in his missing more video calls and live lessons, and he would get further behind. *Id.* Plaintiff stated that he realized it would not be possible for him to finish like that. Tr. 94.

        2.     VE's Testimony

The ALJ found there was no past relevant work ("PRW") for the VE to classify, and she asked the VE to assume an individual of the claimant's age, education, and experience able to perform the full range of exertion. Tr. 94. The ALJ noted the individual would be limited by avoiding concentrated exposure to fumes, odors, dusts, and gasses. She further noted the individual would be "able to perform and sustain unskilled work which is defined as no more than SVP 2 or reasoning level 2 for two-hour increments followed by customary breaks. And interact occasionally with coworkers and the general public." Tr. 94-95. The ALJ asked if there would be jobs available in the national economy that such a person could perform. Tr. 95. The VE responded affirmatively and provided the following examples: hand packager, Dictionary of Occupational Titles ("DOT") number

920.587-018, medium exertional level, SVP of 2, with 162,000 positions in the U.S.; store laborer, DOT number 922.687-058, medium exertional level, SVP of 2, with 99,000 positions in the U.S.; and laundry worker, DOT number 361.685-018, medium exertional level, SVP of 2, with 443,000 positions in the U.S. *Id.* The VE confirmed that the ALJ's limitation for unskilled work was not inconsistent with the DOT and the identified jobs. *Id.*

For her second hypothetical the ALJ asked the VE to make same assumption as in the first hypothetical "but adding that the individual would be off task greater than 20% of scheduled duty time in addition to normal breaks on a consistent basis[.]" Tr. 95. The VE testified there would be no jobs in the national economy that such a hypothetical person could perform. *Id.* The VE stated her testimony was consistent with the DOT and companion publications, although they do not address off-task behavior. *Id.* The VE stated that testimony is based on her training, education, and experience in job placement. Tr. 95-96.

Plaintiff's counsel asked if there would be any jobs available if an "individual would need a job coach in performance of any job that was available or performing job duties" and the VE responded in the negative. Tr. 96.

With no further questions the hearing closed. Tr. 96-97.

D. The ALJ's Findings

In her August 26, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on July 27, 1999. Therefore, he was an adolescent (age 12 to attainment of age 18) age group on December 23, 2016, the date application was filed (20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 on July 26, 2017 (20 CFR 416.120(c)(4)).

2. The claimant has not engaged in substantial gainful activity since December 23, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. Before attaining age 18, the claimant had the following severe impairments: depression, anxiety, and avoidant personality disorder (20 CFR 416.924(c)).

7

4.  Before attaining age 18, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A or B (20 CFR 416.920(d), 416.924, 416.925 and 416.926).

5.  Before attaining age 18, the claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a).

6.  Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a)).

7.  The claimant has not developed any new impairment(s) since attaining age 18.

8.  Since attaining age 18, the claimant continue[s] to have a severe impairment or combination of impairments (20 CFR 416.920(c)).

9.  Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment (20 CFR 416.920(d)).

10. After consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant is capable of performing unskilled work in a low-stress work environment (defined as no more than SVP 2 or RL 2 for two-hour increments followed by customary breaks). He must avoid concentrated exposure to fumes, odors[,] dusts, and gases. He is able to interact only occasionally with coworkers and he can never interact with the general public.

11. The claimant has no past relevant work (20 CFR 416.965).

12. The claimant is currently a "younger individual, age 18-44" (20 CFR 416.963).

13. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

14. Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

15. Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant had been able to perform (20 CFR 416.960(c) and 416.966).

    16.    The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2017, the day the claimant attained age 18, through the date of this decision (20 CFR 416.924(a) and 416.920(g)).

Tr. 16-18, 28, 20, 32-33.

II.    Discussion

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process (Child Standard)

For purposes of eligibility for children's disability benefits under the Act, an individual under age 18 will be considered disabled if he or she has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner's regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity ("SGA"); (2) determine whether the child has a severe impairment or impairments; (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment found in the Listings. *See* 20 C.F.R. § 416.924, 20 C.F.R. pt. 404, Subpt. P, app. 1.

In determining whether a claimant has engaged in SGA, the Commissioner uses the same rules for children under age 18 as she does for adults. 20 C.F.R. § 416.924(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974; 20 C.F.R. § 416.975. If an individual engages in SGA, he is not disabled

regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the claimant does not have a medically determinable severe impairment(s), he is not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a Listed impairment, or that functionally equals one of the impairments found in the Listings. In making that determination, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923; 20 C.F.R. § 416.924a(b)(4), and 20 C.F.R. § 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the Listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. 20 C.F.R. § 416.924(d). If he does not satisfy any of these three steps, he is not disabled. *See* 20 C.F.R. § 416.924(b)-(d).

If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements. *See* 20 C.F.R. § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, which

are broad areas of functioning, intended to capture what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i) through (vi). To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1). The Commissioner will find that a claimant has a "marked" limitation in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions are limited. *See id.*

        2.      The Commissioner's Determination-of-Disability Process (Adult Standard)

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 3. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound

foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff alleges no error regarding the ALJ's determinations regarding childhood disability. Instead, he argues that the "ALJ's adult residual functional capacity [RFC] determination has no substantial evidence support as it was formulated out of thin air based upon the raw data." Pl.'s Br. 9, ECF No. 18. The Commissioner contends that substantial evidence supports the ALJ's RFC determination. Def.'s Br. 5, ECF No. 20. In his Reply, Plaintiff reiterates that the "ALJ's RFC determination has no substantial evidence support." Pl.'s Reply 2, ECF No. 21.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(3) and (4). The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

Here, the ALJ determined "[a]fter consideration of the entire record," that since attaining age 18 Plaintiff had the RFC to perform a full range of work at all exertional levels with some non-exertional limitations. Tr. 30. Specifically, the ALJ limited Plaintiff to

performing unskilled work in a low-stress work environment (defined as no more than SVP 2 or RL 2 for two-hour increments followed by customary breaks). He must avoid concentrated exposure to fumes, odors[,] dusts, and gases. He is able to interact only occasionally with coworkers and he can never interact with the general public.

*Id.*

Plaintiff argues the ALJ's "RFC was made out of thin air. The ALJ simply has not offered any support as to why her interpretation of the raw medical data calls for these limitations." Pl.'s Br. 12. Plaintiff asserts that the "overwhelming evidence indicates that Plaintiff's impairments are significant, and the ALJ should not have played doctor but instead developed the record to get a professional opinion on Plaintiff's limitations." *Id.* Plaintiff then cites to a number of Plaintiff's medical records documenting mental health concerns. *Id.* at 12-14. All but one of the records are from reports prior to Plaintiff attaining age 18. Notably, the ALJ discussed extensively all of the same records cited by Plaintiff (and more) in her decision—as part of her child disability and adult disability analysis. Tr. 20-31. The ALJ also considered Plaintiff's testimony from both administrative hearings, statements made by Plaintiff's grandmother in a February 2017 Function Report, and the opinions of State agency medical consultants and treating/examining physicians. Tr. 17, 22. In making her RFC determination the ALJ noted the following:

> As discussed above, claimant's mental health treatment records document diagnoses of depressive disorder, not otherwise specified: anxiety disorder, not otherwise specified: generalized anxiety disorder: avoidant personality disorder, and social anxiety disorder beginning in January 2014 (Exhibits 2F, 4F, 6F, 10F, 16F, 19F, and 20F). Mental health treatment records dating back to June 2012 reflect that claimant reported depressed mood and anxiety to his treating providers, but that most of his subjective complaints to providers have focused on his anxiety being around others. Claimant and his family members, however, have repeatedly reported improvement with medication: claimant had primarily been on "medication management only" since February 2016; and mental health treatment records do not regularly document significantly abnormal mental status findings.
>
> In particular, prior to and after claimant attaining the age of 18, treatment records from Waccamaw Mental Health Center consistently document claimant to have cooperative behavior and intact attention, concentration, and memory. They consistently document claimant to have a euthymic mood, unremarkable thought content, and logical and goal-directed thought processes. Treatment records document no complaints of

15

suicidal or homicidal ideation and they generally document claimant's insight and judgment to be fair to good (Exhibits 2F, 4F, 6F, 10F, 16F, 19F, and 20F).

Since attaining the age of 18, claimant has continued to attend online school and the overall evidence indicates he has done rather well. Specifically, there is no documentation in the record revealing claimant to have been retained a grade during the period at issue, and claimant testified that he hopes to graduate next year. Thus, while claimant testified that he has difficulty live chatting with teachers; such difficulty does not seem to have been a significant impediment to his education. Furthermore, prior to attaining 18, claimant repeatedly made reports of attempting social interactions or outings in public (Exhibits 2F, 4F, 6F, 10F, 16F, and 19F), and, in April 2018, he reported that he was talking to a girl and walked with her at "Broadway" as well as he had been able to go to a restaurant (Exhibits 4F and 19F). He also reported in March 2019 that he had been able to get a haircut (Exhibit 19F).

Although claimant's severe impairments do not impose disabling limitations, the undersigned finds that they would limit claimant to interacting only occasionally with co-workers and restrict him from interacting with the general public. In restricting claimant from interacting with the public, the undersigned has considered that claimant has reported to his providers having made attempts to increase outings to public places. Nonetheless, treatment notes reflect that claimant has ongoing difficulty around crowds. The overall evidence, however, supports a conclusion that claimant would be able to interact occasionally with others familiar to him, such as co-workers. In so finding, I note that claimant testified that he made two friends at the mental health clinic and that he plays board games with his sisters. Moreover, the undersigned has considered that claimant reported talking with a girl in April 2018, and despite his testimony of difficulty with chatting online with teachers, he repeatedly reported to his mental health providers that he was doing well in school.

Tr. 31-32.

The ALJ adequately explained her rationale for determining Plaintiff's RFC and the record evidence provides substantial support for that determination. *See* 20 C.F.R. § 416.929 (setting out requirements for an ALJ's evaluation of symptoms, including pain). It is not this court's function to re-weigh the evidence that the ALJ considered and that supports her RFC determination. *See Johnson v. Barnhart*, 434 F.3d at 653; *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Spicer v. Colvin*, No. 3:12-460-TLW, 2013 WL 3929824 (D.S.C. July 29, 2013). Here, the ALJ has satisfied the narrative discussion requirement by discussing the medical findings made throughout Plaintiff's treatment history. *See* Tr. 20-31. Based on the ALJ's detailed discussion and consideration of the evidence, including the evidence to which Plaintiff now points, the court finds the ALJ's findings as

to Plaintiff's RFC to be supported by substantial evidence. The ALJ has shown that she "identif[ied] evidence that supports [her] conclusion and 'buil[t] an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

An RFC assessment is meant to convey a claimant's ability to perform basic work activity when accounting for the claimant's limitations. Again, it is the *most* a claimant can do, not the least. The court finds that the ALJ evaluated the medical evidence of record and, based on the evidence as a whole, she assessed Plaintiff's RFC. Accordingly, the ALJ's RFC assessment regarding Plaintiff's capabilities is supported by substantial evidence. *Ladda v. Berryhill*, 749 F. App'x 166, 173 (4th Cir. 2018) (finding remand unnecessary when the ALJ assessed the plaintiff's capacity to perform relevant functions and when the record in the case was adequate).

III.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through an application on an incorrect legal standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

March 17, 2022                                                               Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge